The next case this morning, Your Honor, is 23-1593, Samantha Pike versus Charles F. Budd. Counsel? May it please the Court, Sean Ouellette for Appellant Samantha Pike. May I reserve two minutes for rebuttal? Yes, you may. Thank you, Judge. In Lipset and Roy, this Court made clear that when a state actor directly engages in sexual harassment, it creates a hostile work environment. That violates the Equal Protection Clause. Even when the parties don't share the same employer, and even when the harasser isn't the victim's supervisor. And that compels reversal here, because as the district court agreed, Samantha Pike pled that Judge Budd subjected her to unwelcome sexual advances that created a hostile work environment. The district court erred in granting qualified immunity based on a finding that Judge Budd wasn't her supervisor for two main reasons. First, this Court's precedent makes clear that you don't need to be the victim's supervisor to create a hostile environment that denies equal protection. In Lipset and Roy, both of those cases, the harassers were the plaintiff's co-workers or fellow medical residents that wouldn't have qualified as her supervisors under Title VII. And in Roy, the Court held that the co-workers created a hostile work environment, even though the plaintiff was an independent contractor in that case. And in at least seven other circuits, they've held that sexual harassment violates the Equal Protection Clause, even wholly outside the employment context, where the plaintiff didn't work for the harasser. Counsel, let me ask you, most of these alleged facts took place outside of a court setting. It's not at the court itself. It's in a drug court conference. And what makes, and again, I realize that when there's these drug conferences, the judge goes, all the team members go, the prosecutor, defense attorney, providers, and everything will go. But what makes it so special that that relationship would allow the violation to take place thousands of miles away, wherever the convention has been held? Well, your Honor is exactly correct that this was closely related to the employment context, because this was a conference that they were all at because of their work for the treatment court. And first, I think I have a couple of points in response to your question, because there's a lot there. First, a number of cases that this court has decided make clear that harassment, even outside of work, can contribute to a hostile environment at work. Because of course, if your boss is making unwelcome sexual advances on you at a work conference, that's going to create a hostile environment for you when you go back to the workplace, because of that changed relationship with your boss. In Crowley, in Francina, in Roy itself, which was an equal protection case, the court held that sexual harassment, even outside the workplace, at Christmas parties, at someone's home, that created a hostile environment in the workplace. And of course, Lipset directs us to look to Title VII case law to define the right to be free from sexual harassment in the employment context. I think another part of your Honor's question sort of got at, well, where's the line here? Is there a circumstance in which sexual harassment that was so unrelated to work may be on a vacation, where the two actors had nothing to do with work? I think maybe. But I think, you know. But what you're saying is, this is not a vacation. Of course, they have some quality time after the conferences. They can go out in the group, have some drinks, have dinner. But they're all there because of the work relationship. Correct, Your Honor. And I think, in this case, really the key point is that this did create a hostile environment in the workplace, not only because it carried over into Ms. Pike's work. So it's related. It happens at the conference. They go back, and it's got that effect on her. I think it's both. I think it's the relatedness of the conference, and also primarily because of the effect it had at work. Because she had to miss a week of work after this conference. Remember, Judge Budd continued his harassment in the workplace. And not only did he continue it in the workplace, but he explicitly invoked the interactions at the conference when he came back and summoned Samantha Pike into his chambers and said, I've been thinking a lot about our conversation at the conference, and I'm going to make some changes at home, which suggested to her, and we allege in the complaint, that he was suggesting that he was going to leave his wife to keep pursuing her in the courthouse. And so here, Judge Budd really carried the harassment into the courthouse, into the workplace itself. And that caused Samantha to go out in the team meeting room and cry in front of a colleague. And she had to go home from work that day. So there's no question that it did interfere with her work environment. And that's also a reason that there's no state action in this case, because Judge Budd didn't carry the hostile environment into the workplace. And in theory, wherever he is in that drug court setting, conference or court, he's the court. So the court is wherever he is for all purposes. I don't know if I'd quite put it like that, but he certainly has the power that he has over Samantha Pike certainly didn't disappear because he was at a work-related conference or because he was off the clock because it wasn't between 9 to 5 and he wasn't sitting on the bench, even though, in fact, he was in the courtroom and in his chambers in his robes for part of it. And so, yeah, I would like to address the state action question. I think one of the reasons that there's state action here is because he did carry this hostile environment into the courtroom. And Judge Budd tries to get the court to kind of isolate that conduct in the courtroom. I don't think there's really any dispute that the conduct in the courtroom and chambers was state action. But what Judge Budd tries to do is tries to isolate that and said, well, that wasn't severe and pervasive on its own. You can't consider the harassment at the conference, even though it was work-related and he was still her boss when he was at the conference. And the reason I think the court can't do that is because this court has repeatedly reiterated that you have to look at a hostile work environment, a pattern of harassment as a whole. You can't isolate different events and chop them up and analyze them each individually. And I think that's especially true here when you have Judge Budd invoking his pattern of harassment at the conference actually in the courtroom. So a reasonable jury could find that, again, this is a motion to dismiss. So it's a plausibility standard. A reasonable jury could really. You were talking about motion to dismiss standards. So it's even more favorable to you at this stage. Does it mean you still have to go through the summary? If you were to pass that, you still have the summary judgment context and everything, but you're entitled to discovery. It's at least plausible, which is the standard at this stage. Under Rule 8, this should survive. Right, that invocation of the harassment in the courthouse, the continuation that made clear that this wasn't just going to stop in Nashville, that this was going to carry into Ms. Pike's work environment, that that puts the stamp of state authority on the whole pattern of harassment. And it was especially a significant episode for her because that's what really made clear that her work environment was unsustainable. And to go back to, I think, a point that Your Honor, Judge Helpe, was getting at or touched on in your question earlier, this is state action not only because he carried it into the courthouse, but because, in general, even the harassment at the conference was an abuse of his authority. Because every circuit to address this question has held that when a state official has supervisory or comparable state authority over the victim, that his harassment is state action, fairly attributable to the state, for the same reason it would be fairly attributable to the employer under Title VII. Because his power over her, whether supervisory authority or some other comparable authority, like in the Johnson and Whitney cases, that necessarily infuses the harassment with a particularly threatening character. The words that the Supreme Court used in Ellerth and Farragher. And it makes it harder for someone to refuse his sexual advances because she knows that if she does so, that that offense can have consequences at work. And in fact, the complaint in this case really reflects that underlying rationale behind those cases because Samantha pleads that, in fact, she tolerated many of Judge Budd's sexual advances, agreed to go down and have drinks with him, stuck around at the bar in the courtroom, obeyed his order to go back into chambers because of the power that he had over her work. Remember, he could direct her work in the courthouse. He could remove her from the treatment court team, which would have eliminated three-fourths of her job and likely led to her termination from Wellspring. He had that power over her. That didn't disappear when they went outside the courthouse. Let me ask. I think you just mentioned something. If he eliminates her from the drug court team, her job's in jeopardy. And she might be able to work with the company in some other context. But she's there to work on that team. So what you're saying is that creates a situation. She just can't get out of it, like go to her boss and say, put me somewhere else. It's going to affect her professionally. And it's going to, am I correct? That creates a power dynamic that didn't exist in some of the other state action cases that Judge Budd cites, that explicitly didn't exist in Parita Burgos and Martina's cases where you were dealing. Let's assume she was a state prosecutor, for example. And the judge said, I don't want to ever, because the judge, it's his courtroom. So the judge could say, I don't ever want to see her in my courtroom again. Get out of here. And then maybe she's just hired for being a drug court prosecutor. Then you're leaving her without a job. That's kind of like an analogy, correct? Right. I think even if it was kind of a less of a power imbalance, like with a prosecutor or a defense attorney, that might be. It's going to affect her no matter what. Yeah. I think that even in that situation, it would be state action because the judge has that sort of power to deny motions, sometimes to even ban you from his courtroom. And that could affect your job as an attorney or a litigant. So I think even in those cases, the power would be analogous to many of the other cases around the circuits that have held that any kind of state authority really qualifies as state action. But I don't think the court needs to go even that far. Do you have any citations, and I haven't found any cases analogous to yours, in the drug court context? I know you're analogizing other settings. But do you know of any cases that similarly have arisen from a drug court context, either in favor or against, going either way? We don't have anything, no, specifically in the drug court context, no. But I do want to clarify here that this whole discussion we're having about state action, everyone agrees that it's separate from the qualified immunity analysis. So we don't have to prove that there's a case on point or that it's clear that there was state action here. And the district court analyzed those two issues separately. And the other side analyzes them separately. And we've argued they're different. And there's really no dispute about that in this case. Because when it comes to qualified immunity, the issue is really whether it's clearly established that a private contractor has the right to be free from sexual harassment that creates a hostile work environment where the parties don't share the same employer. There's no physical contact. And some of it occurs outside work. The case law clearly establishes all of that. It clearly establishes that the distinctions that they're trying to draw aren't material to the hostile environment analysis. You have cases like Lipset and Roy that hold that you can create a hostile environment even if you don't share the same employer. While you're talking about the cases, counsel, may I ask, in the context that we have here, the allegations here, where there's direct conduct between the judge and the individual, do our cases say that the proper analysis for an equal protection to determine whether there's an equal protection violation is to import the hostile work environment analyses from Title VII? And what I'm specifically referring to is, do you have to prove severe and pervasive to make out the constitutional violation? Do our cases say that? Well, I think so. First of all, Lipset makes an unqualified statement that you look to Title VII when you're analyzing a sexual harassment claim under the equal protection clause. And in that case, there was one of the harassers who worked at a hospital that didn't share the same employer with the plaintiff, and the court still applied Title VII case law. I think it is a little unclear whether you even would need to prove severe or pervasive harassment. That's my question. What do you say about that? I think the court really hasn't spoken to that question. I think it may be that you don't need to go that far, and I think courts outside the circuit have suggested that. But at minimum, when you do have severe or pervasive harassment, Lipset tells us that that violates the equal protection clause. And I do want to point out that no one here is arguing that we have to prove that the harassment, or we have to allege facts to prove that the harassment here was clearly severe or pervasive. And I haven't seen any court that has dismissed the complaint because it failed to allege those facts. And I think that's because the qualified is an affirmative defense. So while we might have to prove that the harassment was at least not trivial, or potentially that we have argued that it arose to that level of severe or pervasive harassment here, we don't have to prove additional facts to show that it was clearly severe or pervasive. I'm having trouble following that point. Let's assume that an element of your claim is that it was severe and pervasive, and assume qualified immunity applies. If the facts were that it wasn't clear to a reasonable person in the position of the defendant that the conduct was across the line, wouldn't that be a classic qualified immunity situation? Well, that would be a more appropriate analysis to have at the summary judgment stage. This court's been very clear in that, we cite in our briefs, the Alston and the Zenon cases. Zenon involved an immunity claim, although it didn't involve qualified immunity. That the analysis for an affirmative defense like immunity, like qualified immunity, is that the defendant has to prove that it's absolutely clear in the face of the complaint, within the four corners of the complaint, that the facts clearly establish the affirmative defense. So I think what that means in the qualified immunity context is we would have to plead enough facts to state a claim that, for instance, that X was severe or pervasive. You'd have to allege facts that plausibly show X conduct, and then the law would need to be clear that X conduct is violative. I think we have to allege facts. No, I think the analysis is that we have to allege facts. First of all, so our burden is to establish that the right we're asserting is clearly established as a matter of law. But on the facts, which I think is a separate issue and are dealing with a matter of degree to these facts rise to a certain level of severe or pervasive, we would have to allege enough to state a claim. So we'd have to allege enough to show that it was severe or pervasive. But say this court had only made clear that X plus Y was severe or pervasive, and this court thinks that X, in this case, is severe or pervasive. We don't necessarily have to plead additional facts to get to Y because it's very clear we don't have to plead around an affirmative defense. That's black-letter law. But anyway, we do plead that the law was clearly established here that his conduct was severe or pervasive, even though the other side doesn't argue that we need to do that. Because we've cited at least four cases outside the circuit where even single episodes under 1983 of sexual comments or sexual advances were enough to meet the bar. Cases in this circuit. And here you have repeated instances, not single instances. You have repeated. It's a pattern. And here we have repeated instances. Exactly. It wasn't just the sexual advance at the conference. It was following her around after that. It was bringing it into the courthouse. And the sexual advance at the conference, I mean, this was particularly physically threatening. Viewing it in the light, it's certainly most favorable to Pike, because he lied to get to her hotel room when he got there, held the door open, which put her in fear that she was going to be sexually assaulted, which is extremely serious. I'd like to save the rest of my time for rebuttal, unless the court has additional questions. Let me just ask you, just out of curiosity, when the complaint was filed, did you file any supplemental state law claims under Maine law, or it's just federal claims? I believe it was just a federal claim, Your Honor. Thank you. Thank you. Thank you. Good morning, and may it please the court, Susan Widener with my co-counsel Melissa Huey on behalf of Charles Budd. Your Honors, there is no case that would have provided notice to Budd that a handful of overly familiar comments said after hours at a series of bars following the events of a work conference to someone who he knows through work, but with whom he does not share the same employer, would constitute a violation of the Equal Protection Clause of the United States Constitution. Well, doesn't he clearly have state-initiated, granted authority over her in the courtroom? In the courtroom, perhaps, yes. But the conduct that is allowed to be used. So when he calls her into chambers and announces to her that he's going to continue to pursue her, isn't that state action? I think it, well, yes. The conduct in the courtroom calling Mrs. Pike into chambers can be seen as state action. And then given that, does it even matter whether the conduct at the conference was state action or not? Couldn't it simply be a table setting context that made clear that she would be vulnerable, that something that happened and made clear that he knew his advances were unwelcome, whether it was state action or not, so that when he called her into chambers following the conference, wouldn't we take that into consideration, that his behavior at the conference cast a whole different light on what otherwise might have been an isolated event? Your Honor, I'm not aware of case law where state action retroactively colors conduct that otherwise is not state action. And there's a distinction here between what was just discussed about looking at severe and pervasive conduct that happens outside the workplace and how that can contribute to severity. I'm not aware of case law that makes the similar leap for the state action analysis, which is a separate analysis. But I think what Judge Collada is saying, correct me if I'm wrong, is even if let's assume the workplace conduct takes place in the courtroom and the chambers, but what happens in Nashville is part of it. Again, it goes to context. It goes to background as to why this is happening. For example, let's assume this case were to go to trial. In all likelihood, the judge would allow that context, and perhaps not as part of the violation, perhaps, to show there is, you have to have the history. You can't simply say, he called me to the chambers one time and did this, and I felt awful. It goes to the bigger picture, even though it may not be action, per se. Don't you agree with that? I understand the bigger picture. You just can't ignore that. That's not a ledger. It doesn't happen. I understand the bigger picture view. But again, this notion that any judge can say anything or take it out of the context of the judicial system, and that the fact that something can be said in the workplace that somehow brings outside conduct that otherwise would not be viewed as state action, I don't see it. But regardless, the district court made its decision based off of qualified immunity, which is a separate hurdle for plaintiff to overcome, even separate and apart from state action. And so even setting aside state action, there is. But let me, before you go to qualified immunity, do you understand that there is any bit, it can be a minute statement, a small amount of state action, larger amount, that's, counsel will argue differently. But would you agree there is some sort of state action or no state action at all whatsoever, including the conduct in the courthouse, in the chamber? It's Bud's view that the conduct in the courthouse, calling someone into chambers, can be seen as state action, regardless of what someone's being called into chambers for. So if that is state action, then how does qualified immunity shield it from that state action? Well, state action is, the district court found that there, or suggested and concluded without deciding that there was no state action, and assumed that there was state action for the separate purpose of addressing qualified immunity, which is an entirely distinct hurdle for plaintiff to overcome. Pike acknowledges in her brief that LPSIT stands for a general rule of law, but argues that it suffices because there is no meaningful distinction. There absolutely is a meaningful distinction. LPSIT was a university and workplace setting. This court applied the standards of Title VII, which is intended to target the nexus between sexual harassment and the terms and conditions of one's employment. I just want to test the limits of your argument with this hypothetical. Constant, continuous, or at least continual, late night phone calls of a sexually harassing nature, knowing that the drug court will be meeting the next day. And just to be sure, this is just a hypothetical of how this would apply here. I mean, of course, the state action question. With regard to state action. I think the test for state action is whether the conduct, the challenged conduct, relates in a meaningful way to the government official's authority. So I think we would need more facts, what's being said on these phone calls. Isn't that why Discovery's for them? It is, of course, but also this is not at all the hypothetical that is presented in this complaint. This complaint is quite detailed. It alleges the time of day that events happened. And in fact, Pike is seeking to amend her complaint to add facts to support a legal argument that supervisory authority would be enough. And to bring back to your hypothetical, Judge Howard, I think that hypothetical wouldn't invoke the argument. Even if the context of that conversation doesn't relate to the state official's work, would supervisory authority be enough? Do you really want us to say that a hypothetical objectively reasonable judge in this judge's position would not have known that calling her into chambers to announce that he was going to continue to pursue her sexually after what had already happened, and given what he knew about her attitude towards him, that a reasonable judge would think that's OK? That's, well, first, Pike has not argued that this is obviously unclear. That's not something that has been argued. And I think the case law makes clear that it's not at all obvious. And no, I think. You think it's not? So you think it's a close question. Perhaps the judge can do that, and it's no problem? Well, what's not at issue here is whether that is permissible. It's whether there are sufficient guideposts, to use this court's words, for Lloyd. Sure, just what you know about. In other words, you don't have to have a case right on point to know from the way the general cases are that some circumstances. There's not a case of a judge sexually assaulting someone in chambers. Are you saying that there would be a qualified immunity had he sexually assaulted her in the chambers? I think that would be entirely different, and it's a good. It would be obvious that it's unlawful. It would certainly be more obvious, and I think pointing, and your question points to the distinction between the type of conduct, which is something that the courts look to. And in several of the cases cited by Pike, including the recent, one of the more recent ones, which is from 2023, Hess out of the Seventh Circuit, it is about a physical assault, which is the hypothetical that you're proposing. And courts have said a physical assault, yes. Sure. But the case law makes, there's a ton of case law out there that equates non-physical assault with sexual harassment, which is no doubt that a reasonably objective judge, if he just looked at the case law, would know that repeatedly propositioning someone when you know that it's unwelcome and you're in a power authority situation is unlawful. Those are not the facts here. How are they different? He pursued her at the conference. He knew from that that it was entirely unwelcomed. And then once he got in chambers with Roves, forced her to come into chambers using his authority, and then announced that he was going to continue to pursue her. Isn't that classic sexual harassment? Well, first, as to the complaint, I do think that the interpretation of what's alleged to have been said in the chambers conference certainly we're at the motion to dismiss standard, which is in plaintiff's favor. But that is a generous inference as to those words. But that's the way the law calls us under, for a motion to dismiss, we're supposed to construe the pleading and the facts favorably and ask whether they plausibly establish anything. Did anything I just say in that description not fit a plausible reading of the complaint? Well, what's alleged to have been said in the chambers conversation is that you're a good listener and that I will be changing things in my personal life. But again, we are at the motion to dismiss standard,  And setting that aside and returning to the fact that there would still be no, I guess I would say that we've just heard Pike say that it's unclear whether the severe or pervasive standard applies here. Looking at this court's case law and even other circuit courts, which again, define sexual harassment. Aren't the facts themselves severe and pervasive? Because this is not, who wants to, I think it's self-explanatory. Aren't they severe and pervasive, these facts? No, and Your Honor, we've. What would have to have happened for them to be in severe and pervasive? For the judge to do it three, four times, or chase her to the parking lot, or follow her house, or something like that? Well, I mean, we can. Where do you draw the line? Because again, even if the conduct that took place at the Drug Court Conference is technically not actual, as you would suggest, when you look at the whole context, hasn't that line been crossed? Well, and there's sort of two parts to answer that question. And one is that it's not clear that the severe and pervasive standard under Title VII applies here. Assume that it applies. All right, can we read this complaint as plausibly alleging that? If we assume that what happened at the conference is at least background information, whether or not it itself was state law, but it gave him knowledge, can we, to call her into chambers after that, why would that not be severe and pervasive? Well, it's not severe and pervasive because of the frequency of the conduct. It certainly is entirely non-physical conduct. And the other piece that I would say, and this was part of what the court was just asking Pike about is- You say, again, physical. But again, this not only goes to her physical well-being, it's also her mental well-being, which in a sense can be even worse than the physical invasion. Sure, my reading, even a favorable reading of the complaint, is that it does not allege any physical conduct as this court defines physical conduct separate from other conduct under Title VII. And I know that my time is coming to a close, so I'll also just say that we disagree with Pike's argument that the type of conduct can be parsed out, that the qualified immunity argument can be parsed out separately, as was advanced. Thank you. Any more questions? Thank you. Thank you, Your Honor. We'll have a three-minute break after this case. OK, thank you, Judge. One moment, counsel. Two minutes for rebuttal. I want to address a few quick points. One, the amended complaint and the proposed amended complaint absolutely alleged that Judge Budd was talking about leaving his wife to keep pursuing Pike in chambers. And it certainly meets the don't notice pleading stage, drawing all inferences in our favor, that that's what he was talking about. Another thing I wanted to clarify is that we do argue that it is absolutely clear that at minimum, severe or pervasive sexual harassment violates the Equal Protection Clause, even if it's unclear that less than that. Yes, when you said it might not be clear in the case law, that was in response to a question about, well, what do our cases require? How much of Title VII hostile work environment doctrine are we importing? Have our cases imported? Understood. And third, construing the complaint in the light most favorable to Ms. Pike, we do allege something that went beyond verbal conduct that was physically threatening. Because of course, when someone lies to you to follow you to your hotel room and then stands there and holds the door open and basically won't leave until you agree to have drinks with them, that's physically threatening. That goes beyond just sexual innuendo or an offhand comment. Because counsel had a difference, suggesting there's no physical, it's not physically severe and pervasively, but am I correct that you're arguing even outside of the physical, there is a mental, emotional, severe and pervasiveness? That's the other reason it's a severe and pervasive, and it goes beyond just a psychological impact here. Because it actually, we have pled that it interfered with her work. She had to miss work after the conference because of this when he harassed her in chambers. She had to leave work for the day. She was crying in front of colleagues, which obviously interferes with your work when you're breaking down front doors like that. That's demeaning, humiliating, et cetera, et cetera, right? Correct. And just to Judge Howard's hypothetical about the prank phone call, that's actually the facts of WARC, O'WARC, which is another one of the cases that makes it clear that harassment outside of the work environment that contributes to a hostile environment violates Title VII and therefore the Equal Protection Clause. Thank you. Thank you, Counselor. All rise, please. The call will take a three-minute recess.